IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 06-723-01 (JBS) |
| v. | |
| JOHN P. SGARLAT, | **OPINION** |
| Defendant. | |

APPEARANCES:

PAUL J. FISHMAN, United States Attorney
By:  ERIC M. SCHWEIKER,
    Assistant U.S. Attorney
402 East State Street - Room 502
Trenton, NJ  08608

SIMON S. KOGAN, Esquire
27 Weaver Street
Staten Island, NY  10312
    Attorney for Defendant

**SIMANDLE**, District Judge:


I.   **INTRODUCTION AND PROCEDURAL HISTORY**

Defendant John Sgarlat, under investigation for securities
fraud, wire fraud, and tax evasion, supplied a written confession
to agents of the FBI on September 28, 2005 and began cooperating
with the government.  Mr. Sgarlat, represented by highly
experienced, appointed counsel Harold Shapiro, Esquire, followed
up with detailed proffer sessions with the U.S. Attorney's
Office, intending to plead guilty under a negotiated plea
agreement.  Although Sgarlat's cooperation was ended by the
government in February 2006, he still desired to cooperate

against others and to enter into a guilty plea that would
hopefully minimize his own criminal exposure.  On September 8,
2006,  pursuant to a lengthy written plea agreement dated July
13, 2006, the Court convened the Rule 11 hearing and accepted Mr.
Sgarlat's guilty plea to a two-count Information.  Count One
charged Defendant with conspiracy to commit securities fraud in
violation of 18 U.S.C. § 371 with respect to unlawful issuance of
stocks in a publicly traded company, eContent, Inc., as well as
misusing corporate funds for personal purposes.  Count Two
charged Defendant with money laundering, in violation of 18
U.S.C. § 1956(a), alleging that between February 2003 and
September 2005, Defendant engaged in financial transactions
involving the proceeds of specified unlawful activity, namely
mail fraud, for the purpose of concealing his control of that
property; specifically, Count Two of the Information alleged that
Defendant solicited individuals to invest approximately $230,000
in two companies, Branded Media Corp. and Fishing World Media
Corp., deposited these monies into a business account he
controlled in the name of Convergiton, Inc., and spent them on
himself.  The 52-page transcript of that hearing reveals the
thoroughness of Sgarlat's knowing and voluntary decision to plead
guilty, as well as the detailed factual basis of guilt Sgarlat
supplied by his unequivocal answers to the dozens of questions.
(Tr. 9/8/06 at 1-52.)  As part of the plea agreement, the United
States also agreed not to charge Mr. Sgarlat with income tax

evasion or other crimes connected with the offenses in Counts One
and Two.

Over the ensuing year, as the Probation Office gathered
information for the rather complex Presentence Investigation and
Report, Sgarlat grew critical of Mr. Shapiro's efforts to reduce
Sgarlat's sentencing exposure.  Indeed Mr. Shapiro was attempting
to preserve the Probation Office's recognition of Sgarlat's
acceptance of responsibility, while Mr. Sgarlat was writing
directly to the Probation Office, on December 26, 2006, without
Mr. Shapiro's knowledge.  Around the time when the draft
Presentence Investigation and Report was issued on June 12, 2007,
Mr. Sgarlat retained new counsel, Simon S. Kogan, Esq., of New
York, who substituted into the case in place of Mr. Shapiro.

Thereafter, Mr. Kogan submitted numerous objections and
documents to the Probation Department, which noted them and
issued its final Presentence Investigation and Report on October
31, 2007.  Sentencing was scheduled for November 20, 2007.
Meanwhile, Mr. Kogan submitted the present motion to withdraw
Defendant's plea of guilty on October 18, 2007, pursuant to Rule
11(d)(2)(B), Fed. R. Crim. P.

The Court thereafter convened hearings upon Defendant's
motion to withdraw his plea of guilty, including hearing
testimony of Mr. Sgarlat and Mr. Shapiro and arguments of
counsel.  For the following reasons, the Court finds Defendant
Sgarlat has not met his burden, under Rule 11(d)(2), of showing a

3

fair and just reason for the withdrawal, and this motion will be denied.

## II.  <u>DEFENDANT'S ARGUMENTS</u>

Counsel for Defendant Sgarlat presents five reasons in support of this motion to withdraw Defendant's plea of guilty, which are quoted verbatim:

> 1. Previous Counsel was incompetent and ineffective.
> 2. The defendant relied on the advice of previous Counsel to his severe detriment.
> 3. Factual Basis and Stipulations filed by the U.S. Attorney are time-barred by the Statute of Limitations.
> 4. The Defendant's Version of Offense does not constitute violation of the statutes in question.
> 5. Recently uncovered exculpatory evidence unlawfully suppressed by the U.S. Attorney proves the defendant is innocent beyond doubt.

Defendant's Motion [Docket Item 38] at 3.

According to new defense counsel, the previous counsel, Harold Shapiro, Esq., was incompetent and ineffective in counseling Sgarlat to enter into the negotiated guilty plea agreement to the two-count Information.  New counsel, Simon Kogan, Esq., claims Mr. Shapiro failed to recognize glaring flaws in the Government's case, such as a statute of limitations bar to Count One, and in allegedly misrepresenting his abilities to defend the case, and in failing to challenge Sgarlat's allegedly involuntary confession, and in failing to obtain all evidence in

4

the Government's investigative files recapped in 23 categories of documents (Def. Br. at 5-6).  New counsel also alleges Mr. Shapiro was deficient in obtaining and reviewing allegedly exculpatory documents, including documents in Sgarlat's own possession, public records, and records of full refunds to certain victims of the crimes.

New defense counsel also alleges that the Government failed to produce exculpatory documents required by <u>Brady</u> before Sgarlat waived indictment and admitted his guilt to the two-count Information.  Counsel takes issue with his own client's stipulations with the Government in his plea agreement.

The Government refutes each of these arguments, as discussed below.


## III. <u>DISCUSSION OF LAW</u>

### A. <u>Standard for Withdrawal of Guilty Plea</u>

Under Rule 11(d)(2)(B), Fed. R. Crim. P., a defendant "may withdraw a plea of guilty or nolo contendere... after the court accepts the plea, but before it imposes sentence if... the defendant can show a fair and just reason for requesting the withdrawal."  The Third Circuit has explained this standard for withdrawal as follows:

> A district court must consider three factors
> when evaluating a motion to withdraw a guilty
> plea: (1) whether the defendant asserts his
> innocence; (2) the strength of the
> defendant's reasons for withdrawing the plea;

5

and (3) whether the government would be prejudiced by the withdrawal.

United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003); see also United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001). Where the defendant claims that counsel was ineffective in permitting him to plead guilty, the Third Circuit's standard states:

> A court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel only if (1) defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms, and (2) defendant shows that he suffered sufficient prejudice from his counsel's errors.

United States v. Jones, 336 F.3d at 253-54.

The burden of demonstrating a "fair and just" reason falls on the defendant, and that burden is "substantial." Id. at 252, citing United States v. Hyde, 520 U.S. 670, 676-77 (1997) and United States v. Isaac, 141 F.3d 477, 485 (3d Cir. 1998). Reasons that fail to meet a defendant's burden include "a shift in defense tactics, a change of mind, or the fear of punishment." United States v. Jones, 336 F.3d at 252, quoting United States v. Brown, 250 F.3d at 815 (quoting United States v. Jones, 979 F.2d 317, 318 (3d Cir. 1992)).

## B.   **Defendant's Decision to Plead Guilty**

John P. Sgarlat's decision to negotiate a plea agreement with the Government and to plead guilty unfolded over a year's

6

time.  In 2005, the FBI and the IRS were investigating Sgarlat

for various securities frauds, money laundering, and income tax

crimes.  He was interviewed and gave a signed, written confession

to central aspects of these crimes on September 28, 2005, and he

was also interviewed on that date at length.  See Govt. Mem. Opp.

(Ex. H, reproducing FBI Form 302 and Defendant's signed

statement.)  Mr. Sgarlat was anxious, after confessing, to

cooperate with the Government and continued to do so without

counsel through December, 2005.

As Mr. Sgarlat claimed to be indigent and was the target of

the ongoing investigation, in December 2005 the Court appointed

counsel, Harold Shapiro, Esq., under the Criminal Justice Act.

Mr. Shapiro, a member of this Court's CJA Panel, is a former

Assistant Federal Public Defender and an active criminal defense

attorney in federal and state courts for over 30 years.  He

testified in detail at the hearing regarding his representation

of Mr. Sgarlat, the many meetings and phone conversations he held

with him, and Mr. Sgarlat's desire to plead guilty.  According to

Mr. Shapiro's testimony, he prepared Sgarlat for a proffer

session with the prosecutors that was held on January 18, 2006.

Although Sgarlat took issue with some of the specifics of the

government's allegations, there was never a meeting or

conversation where Sgarlat professed innocence.  In the January

18, 2006 proffer session in Camden, Mr. Shapiro confirmed that

Sgarlat was questioned about the subjects of potential charges

7

for securities fraud, money laundering, and income tax fraud, and Sgarlat made damaging admissions in each of these areas.

Meanwhile, Sgarlat was no longer considered a cooperator because in February 2006 the federal agents learned that Sgarlat had disclosed that he was "working with the FBI" in this investigation.  From that point forward, according to AUSA Schweiker, the prosecution team could not trust Sgarlat and elected not to reveal further aspects of its investigation to him.

On February 21, 2006, Mr. Sgarlat was arrested on a one-count criminal complaint charging money laundering in violation of 18 U.S.C. § 1956(a).  That complaint alleged that during the time period from February 2002 to February 2005, Mr. Sgarlat received approximately $220,000 in funds from individuals who believed they were investing in companies that Sgarlat had some association with;  he allegedly deposited that money into an account he controlled in the name of "Convergiton, Inc." and spent the money on personal items, in order to avoid an outstanding tax obligation.

Mr. Shapiro further testified, and the Court credits, that from the earliest point in his representation of Mr. Sgarlat in December 2005 through the time of his entry of the guilty plea in September 2006, Sgarlat was of a mind to negotiate an acceptable plea agreement.  Mr. Sgarlat, despite the end of his cooperation

after the February 2006 incident, remained "gung-ho to cooperate," in Mr. Shapiro's words.

At a meeting in Camden in May 2006, AUSA Schweiker showed Mr. Shapiro and Mr. Sgarlat checks and other documents supporting the charge, consisting of lots of documents indicating Sgarlat had received money from investors, placed it into the Convergiton account, and used it for his own personal expenses.  The circumstances of the Convergiton account showed that the account was used as a personal living expense account for which Sgarlat avoided using his own name to avoid making reports to the government, which all made any defense to the charge difficult, in Mr. Shapiro's view.

Mr. Shapiro had also considered whether a motion to suppress Mr. Sgarlat's confession from September 2005 might succeed, since Sgarlat had been abusing drugs and alcohol for a long time as of that date.  If the case had been indicted, Mr. Shapiro would have challenged that confession, he testified.

Mr. Shapiro also considered whether the proposed charge that became Count One of the Information (conspiracy to misuse eContent corporate funds for personal expenses and to misuse an SEC Form S-8 to unlawfully issue company stock in violation of 18 U.S.C. § 371) was time-barred.  Because the alleged fraud continued into 2002, Mr. Shapiro concluded that the proposed charge was not time-barred by the five-year statute of limitations in September 2006, according to his testimony.

Whether Mr. Shapiro overlooked this potential defense is discussed further below.

Overall, during the eight months Mr. Shapiro represented defendant before the September 2006 Rule 11 hearing, "the issue was not going to trial, [but] in a vast majority of conversations, he was preparing to plead," according to Mr. Shapiro's testimony.

The defense and prosecution thus negotiated the plea agreement.  While many documents were obtained from the government and others from Sgarlat's files and from public sources, there was no formal exchange of discovery.  There is no provision of a statute or rule of criminal procedure requiring the government to make pre-indictment disclosures to the target, as discussed further below.

Mr. Shapiro was able to achieve the objective of limiting the charges to the two counts, including an agreement that Sgarlat would not be prosecuted for securities fraud schemes committed in connection with eContent, Branded Media, or Fishing World or the laundering of proceeds from those schemes or Sgarlat's obstruction of justice in connection with the government's investigation of those schemes.  (Plea Agreement Letter dated July 13, 2006, Ex. R to Gov. Opp. Br.).  Significantly, the proposed plea agreement also obtained and memorialized the United States' promise not to prosecute Sgarlat for a broad variety of failure to file, failure to pay, or

evasion of federal income taxes for tax years 2002, 2003, 2004, and 2005, provided that prior to the date of sentencing Sgarlat complies with the obligations entitled "Filing of Federal Income Tax Returns" for those years in his plea agreement letter. Id. at 2, 6. There appears to be no dispute that Sgarlat failed to file those returns and that he had engaged in efforts to commit tax fraud. The resulting plea agreement thus achieved a major benefit for Mr. Sgarlat in its non-prosecution features. The plea agreement also preserved the opportunity to argue mitigating circumstances such as alcoholism and recovery, to seek a lower sentence, as well as the right to seek any other downward adjustment. Mr. Sgarlat and Mr. Shapiro signed the plea agreement on August 4, 2006. Id. at 7.

Mr. Shapiro also revisited with Mr. Sgarlat the many detailed questions the Government proposed to elicit a factual basis for the plea. He reviewed them with Sgarlat in a series of conversations and made any changes suggested by Sgarlat to make them more accurate. AUSA Schweiker memorialized those questions to be asked at the Rule 11 hearing in a memorandum to the Court before the hearing, which he also sent to Mr. Shapiro for his use with Sgarlat.

Prior to the hearing, Mr. Sgarlat also completed the "Application for Permission to Enter Plea of Guilty" (Ex. C-1 on 9-8-06, reproduced in Govt. Opp. Br. Ex. A), which he also signed on September 8, 2006. At the hearing on September 8th, the Court

11

engaged counsel and defendant Sgarlat in a lengthy plea colloquy. (Tr. 9-8-06, reproduced in Govt. Opp. Br. Ex. B.)  It was clear from the hearing, including Mr. Sgarlat's responses under oath, that his decision to plead guilty was knowing, voluntary, and with the effective assistance of counsel.

The hearing established that the defendant was knowingly and voluntarily waiving his rights to have the matter presented to a grand jury (Tr. at 2-3), that the defendant had read and understood the Information and discussed the charges thoroughly with Mr. Shapiro (Tr. at 5, 11, 13), and that he enjoyed good communications with Mr. Shapiro and thought his efforts were "great" (Tr. 13).  The colloquy further established that Sgarlat was pleading guilty of his own free will and that he was prepared to plead guilty (Tr. 11, 13), and that he had not consumed any alcohol in about 160 days prior to the sentence.  (Tr. 12). Prior to that period, he had also gone 144 days before slipping two days.  (Id.).  The terms of the plea agreement were reviewed, and Sgarlat testified that Mr. Shapiro had gone over it with him "in detail" (Tr. 14), and answered all his questions.  (Tr. 15). Similarly, Sgarlat understood and accepted the stipulations in his plea agreement, all of which he found to be true and correct. (Tr. 15).  He understood the forfeitures that he agreed to (Tr. 16), as well as his obligation to file truthful federal income tax returns for 2002-2005 (Tr. 17), as well as the sentencing jeopardy and procedures to be used to determine his sentence.

(Tr. 19-22).  He understood the binding nature of his
stipulations and the fact he would not be permitted to withdraw
from his plea on the ground that the Court rejects one or more of
the stipulations (Tr. 26).  He was informed in detail about the
advisory Sentencing Guidelines and their computation, as well as
all the other factors to be considered to determine a just
sentence, which he well understood (Tr. 27-29.)  The Court
ascertained he was aware of his Constitutional rights to plead
not guilty and to go to trial by jury; the right to
representation of counsel, cross-examination of the government's
witnesses; to subpoena witnesses, documents, and things; to
remain silent or to testify at trial; the right to a unanimous
jury; the government's burden of proof beyond a reasonable doubt;
the presumption of innocence; and the Court easily found that his
decision to waive all these rights and protections was knowing
and voluntary.  (Tr. 29-32).

What then followed was one of the most thorough factual
recitations any defendant has given at a Rule 11 hearing in this
Court's experience.  Mr. Sgarlat answered dozens of questions
detailing his guilt on these two counts.  (Tr. 33-43.)  On one
area of questioning he hesitated and spoke with counsel who
clarified that they did not know if the amount of money from
investors in Branded Media and Fishing World Media that he
deposited into the Convergiton account was exactly $320,000, as
stipulated, but Defendant admitted it was approximately $320,000,

13

and he also confirmed it was at least a "substantial amount." (Tr. 42.)  In the present motion, new counsel makes much of the fact that Mr. Shapiro and Mr. Sgarlat did not actually have all the underlying account documents and so could not add up these deposits, a fact Mr. Shapiro also pointed out at the Rule 11 hearing (Tr. 42, 43), but this circumstance is of no moment, as discussed further below.[1]

The Court accepted Defendant's plea of guilty to both counts, finding all requirements of Rule 11 had been met, and the case was set for sentencing for January 19, 2007.  Thereafter, the sentencing was adjourned several times to enable the Probation Department to complete the lengthy presentence investigation and report, as well as to give Defendant more time to file his federal tax returns for 2002-2005 before sentencing. During the Probation Department's investigation, Defendant chose to furnish his own statement dated August 21, 2007 (reproduced in Presentence Investigation and Report dated Oct. 31, 2007 at ¶ 94), giving various explanations to reduce his culpability (such as alcohol and drug addiction), but in the end admitting he is guilty,[2] stating:  "Make no mistake, I am guilty of the offenses comprising the Two Count Information."  Id. ¶ 94 at 35.

---

[1] The amount of actual or intended loss remains to be determined at the sentencing hearing pursuant to U.S.S.G. § 2B1.1.

[2] Whether Defendant should receive credit for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 remains to be determined at the sentencing hearing.

**C.**   **Whether the Defendant Asserts his Innocence**

Whether a defendant asserts his innocence is the first factor to consider in a Rule 11(d)(2)(B) motion.  <u>Jones</u>, 336 F.3d at 252; <u>Brown</u>, 250 F.3d at 815.  "Assertions of innocence must be buttressed by facts in the record that support a claimed defense."  <u>Brown</u>, 250 F.3d at 818 (quotation omitted).  Further, the defendant must not only buttress his claim of innocence but also "give sufficient reasons to explain why contradictory positions were taken before the district court."  <u>Jones</u>, 336 F.3d at 253 (quotation omitted).

Throughout his arguments, Defendant does not credibly claim his innocence on Counts One or Two.  His confession to the FBI and IRS in September 2005 (Govt Opp. Br., Ex. H), and his expanded admissions in three debriefings with the FBI (Gov't Opp. Br. Ex. I), all confirm his admission of the facts of his guilt.  Likewise, his thorough and well-informed answers to the factual basis questions at the time of his Rule 11 hearing also admitted his guilt and ruled out his innocence.  Although Mr. Sgarlat's testimony at the hearing on this motion was critical of Mr. Shapiro's incomplete review of documents, he never once claimed in his testimony that he was innocent of Counts One or Two, nor that his Rule 11 hearing testimony was false.

The principal factual quarrel that Defendant now offers is his own "discovery" that he returned about $600,000 of his stock to eContent after misusing company funds and unlawfully issuing

15

stocks.  He claims, apparently, that this negates the crime in Count One.  This is not correct.  The repayment of the corporation's stock after admittedly misusing the funds and issuing stocks unlawfully does not negate the conspiracy to which he pled guilt; such effort to make restitution may mitigate the harm caused by the crime, a matter to be determined at sentencing, but does not undo the offense itself.  This would therefore not support a meritorious defense even if the facts of restitution he now alleges are true.

The Court finds no credible profession of actual innocence, and no basis for doubting the truth of Defendant's statements in his debriefings and under oath in his Rule 11 colloquy as to the facts of his guilt.

### D. **Strength of Defendant's Reasons for Withdrawing the Plea**

As summarized on p.4, <u>supra</u>, new defense counsel supplies five reasons in support of his motion to withdraw the guilty pleas.  Each has been considered, with the categories overlapping somewhat.

### 1. **Whether previous counsel was ineffective; whether Defendant relied on advice of previous counsel to his detriment**.

New counsel criticizes Mr. Shapiro's efforts in representing Mr. Sgarlat before his plea of guilty, principally for failing to obtain documents from the Government's files and to inspect

16

certain documents that had been seized from Sgarlat.  His criticism of Mr. Shapiro also includes the allegation that Shapiro failed to appreciate that the statute of limitations had expired on Count One or that Sgarlat's confessions could be suppressed.

Mr. Shapiro was not derelict in failing to insist upon production of documents from the prosecution while his client contemplated pleading guilty.  The target's right to discovery of information known to the government is non-existent.  The prosecution may volunteer information, such as statements and records that evidence the core of the crimes under investigation, for the sake of inducing a guilty plea, as the prosecutor did in this case.  But neither Rule 16(a), Fed. R. Crim. P., nor the Jencks Act, 18 U.S.C. § 3500, have any application before an Indictment or Information is filed.  The record is clear that Mr. Shapiro pressed AUSA Schweiker for as much information as Schweiker could give him, as Shapiro testified, but it is solely in the prosecutor's discretion whether to turn over his or her files to the defense during pre-Information or pre-Indictment negotiations.  In this case, the government was not in an expansive mood for document production, given its mistrust of Sgarlat following his undermining of cooperation.  Mr. Shapiro also had a tactical decision to make, as he described in his testimony, of whether to battle the government for greater disclosure or whether to make due with the discovery he was given

(which was not insubstantial) to focus his efforts on getting the government to extend a favorable plea bargain to his client.  His choice of the latter option was not unreasonable and it comported with his client's wishes for a negotiated plea.  Mr. Sgarlat's belated allegations are the product of second-guessing the strategy of both Mr. Shapiro and the Defendant himself.  This change of heart is not a cognizable reason to permit withdrawal of the guilty pleas.

Defendant alleges that Mr. Shapiro failed to recognize that, by September 2006, the crime charged in Count One was barred by the statute of limitations.  Defendant relies on the fact that the unlawful Form S-8 consulting agreements Sgarlat executed were all signed more than five years before he executed his plea agreement.  By pleading guilty, the Defendant waived any potential statute of limitations defense.  United States v. Karlin, 785 F.2d 90, 91-93 (3d Cir. 1986).

Moreover, as Mr. Shapiro recognized in his testimony, the statute of limitations had not expired on this conspiracy charge under 18 U.S.C. § 371.  The Information alleged that the conspiracy continued until at least February 2002, within five years of the filing of the Information.  Two of the overt acts in furtherance of the conspiracy, to which Sgarlat allocuted in his Rule 11 hearing, in fact fell within the limitations period.  Sgarlat admitted that on or about September 27, 2001, after he left eContent, he made unauthorized use of an eContent credit

18

card, continuing his pattern of misuse of eContent funds as
charged in Count One.  (Tr. 9-8-06 at 34.)  Second, Sgarlat
admitted that in approximately February 2002, he unlawfully sold
a block of eContent stock to a cooperating witness at a
substantial discount.  (Tr. 38).  The unauthorized credit card
use furthered the goal of the charged conspiracy to misuse
eContent funds for personal expenses, while the February 2002
stock sale furthered the conspiracy by demonstrating Defendant's
continuing involvement and lack of withdrawal.  These facts,
which were admitted in Defendant's Rule 11 allocution, would
easily meet the government's burden of proving at least one overt
act within five years of filing of the indictment or information.
United States v. Oliva, 46 F.3d 320 (3d Cir. 1995); United States
v. Hankin, 607 F.2d 611, 612 (3d Cir. 1979).  Mr. Shapiro was
thus correct not to press a statute of limitations defense on
Count One.

Mr. Shapiro was also not deficient in counseling a guilty
plea rather than inviting an indictment so that he could then
move to suppress Mr. Sgarlat's confessions.  New counsel argues
strenuously that the confessions could not have withstood
scrutiny because Sgarlat had an alcohol addiction and was
intoxicated.  First, the September 28, 2005 interview and the
January 2006 proffer were not custodial interrogations.  No
Miranda warnings are required to be given, and the nature of any
Miranda waiver is thus irrelevant.  It is recognized that the

19

voluntary nature of any confession must always be assessed before it can be used as evidence.  Under 18 U.S.C. § 3501(a), a confession "shall be admissible in evidence if it is voluntarily given."  Voluntariness is determined by the judge before admissibility, and then the jury may consider evidence on voluntariness, being instructed that it should "give such weight to the confession as the jury feels it deserves under all the circumstances."

On this point, Mr. Sgarlat did not testify about the degree, if any, of his intoxication, or about any circumstances under which he gave his confessions before being represented by a lawyer.  Sgarlat's statements were lengthy and cogent, clearly not the words of someone acting without control of his faculties. There is no basis in this record to conclude that the defense would have been successful in suppressing the confessions at trial.  Moreover, even in cases where voluntariness of a <u>Miranda</u> waiver is at issue, intoxication is merely a factor to consider, among many, in determining whether a subject's will was overborne.  Thus, the fact of intoxication is not dispositive. <u>Matylinsky v. Budge</u>, 577 F.3d 1083, 1095-96 (9th Cir. 2009) ("We have held that an intoxicated individual can give a knowing and voluntary waiver, so long as that waiver is given by his own free will."); <u>United States v. Abfalter</u>, 340 F.3d 646, 652-53 (8th Cir. 2003) (defendant's marijuana use did not render his <u>Miranda</u> waiver unintelligent because he was not sufficiently impaired);

Boggs v. Bair, 892 F.2d 1193, 1198 (4th Cir. 1989) ("[T]he mere
fact that one has consumed alcoholic beverages does not mean that
he is so intoxicated as to make his confession involuntary.");
Taylor v. Commonwealth of Pa., 686 F. Supp. 492, 501 n.4 (M.D.
Pa. 1988) ("[O]ne may be under the influence of alcohol so as to
impair his ability to drive, while, at the same time, he may be
able to understand questions being asked and to be voluntarily
responsive to such questions.").

The obvious risks to Defendant in forcing this case to trial
in order to attempt to suppress the confessions were at least
three-fold:  (1) The motion would probably lose, as no
circumstances in this record suggest success; (2) the motion
could succeed, but other evidence, including the testimony of
cooperating witnesses, could supply this evidence against
Sgarlat; or (3) the defendant, by pressing trial, would not
receive the benefit of a favorable plea agreement and would
probably face additional charges, as addressed in the plea
agreement.  Of course, as Mr. Shapiro testified, he was prepared
to challenge the confessions if the matter was indicted.  The
Court holds that Mr. Shapiro's decision to counsel a plea of
guilty even if there may have been an arguable chance to suppress
confessions, was reasonable and competent.

Overall, Mr. Shapiro's advice was sound and well-informed.
He recommended Defendant's acceptance of a very fair plea
agreement, which represented a compromise of the respective

21

positions available to the prosecution and the defense.  His
performance hardly gives this Court any reason to set aside the
plea of guilty.  Defendant has not shown that his attorney's
advice, under all the circumstances, was unreasonable under
prevailing professional norms.  United States v. Jones, 336 F.3d
at 253-54.  Similarly, Defendant has not shown that he suffered
prejudice from his counsel's errors, id.; to the extent that
prior counsel overlooked documents that reflect upon the amount
of loss caused by Defendant's schemes, the Court will entertain
such proofs as the parties may offer regarding loss as a
sentencing factor at the sentencing hearing,[3] since the Court is
empowered to make an independent determination of this Sentencing
Guideline factor notwithstanding the parties' stipulations of
approximate amounts of loss on Counts One and Two.

---

[3] The Court is aware that Defendant and the United States
stipulated to amounts of loss on Count One of more than $400,000
but less than $1,000,000, and on Count Two of "approximately
$320,000," see Plea Agreement, Schedule A, ¶¶ 1a & 2b reproduced
at Gov't Opp. Br. Ex. 3.  The Court is not bound by the parties'
stipulations, as the Plea Agreement provides:  "This agreement to
stipulate, however, cannot and does not bind the sentencing
judge, who may make independent factual findings and may reject
any or all of the stipulations entered into by the parties. . . .
A determination that a stipulation is not binding shall not
release either this office or John P. Sgarlat from any other
portion of this agreement, including any other stipulation."  Id.
at p. 5.  The Court's consideration of this potentially
mitigating information in connection with this sentencing factor
further militates against any finding of prejudice to the
Defendant.

> **2.** **Whether the factual basis and stipulations of the parties are time-barred by the statute of limitations**.

The Defendant seeks to vacate his plea of guilty to Count One on the basis that it is time-barred.  This has been addressed above in Part III.D.1, and for those reasons, the Court finds that this ground lacks merit.  No time-bar issue is raised with respect to Count Two, which clearly encompassed a crime committed between February 2003 and September 2005, as admitted by Defendant, also well within the five-year period prior to filing the Information.

> **3.** **Whether Defendant's version of the offense constitutes a violation of the statutes in question**.

New counsel has not specifically addressed how the facts Mr. Sgarlat admitted in his testimony at the Rule 11 hearing and in his written plea agreement fail to provide a factual basis for a finding of guilt on Counts One and Two.  Under Rule 11(b)(3), the Court, before accepting a guilty plea, must determine that there is a factual basis for the plea.  This Court did so on September 8, 2006. (Tr. 2-8-06 at 44.)  There is no basis to conclude that Mr. Sgarlat failed to admit the criminal conduct with which he was charged in Counts One and Two, as to each essential element.

At the very most, new counsel has emerged with a list of other facts or tactics that could be used to present a case if the matter went to trial, such as by suggesting motives of prospective government witnesses and cooperators to lie or by

suggesting alternative explanations or motives for the conduct
Mr. Sgarlat has admitted.  These arguments, individually and
collectively, do not demonstrate that the Defendant's admissions
and confessions were untrue.  They merely reflect strategies that
could be employed to attempt to demonstrate that the Government
may not have a perfect, seamless case, as in essentially any
criminal prosecution.  While it may be reasonable to think that
Mr. Sgarlat had a defensible case, it was more reasonable to
reach the conclusion that his best interests were served by his
decision to plead guilty.  In any event, the proffer of
explanations for his criminal acts does not undermine the
validity of his admitted criminal acts in establishing a
sufficient factual basis for the crimes admitted in Counts One
and Two.

### 4.   Whether the Government violated disclosure obligations under Brady and its progeny.

Defendant now argues that "recently uncovered exculpatory
evidence unlawfully suppressed by the U.S. Attorney proves the
defendant innocent beyond doubt."  (Def. Mem. at 3.)  New counsel
provides a listing of allegedly exculpatory evidence which the
prosecutor allegedly prevented Mr. Sgarlat from seeing prior to
pleading guilty.  (Id. at 7-10.)

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme
Court held that due process forbids a prosecutor from suppressing
"evidence favorable to an accused upon request . . . where the
evidence is material either to guilt or to punishment,

24

irrespective of the good faith or bad faith of the prosecution."
The Third Circuit has stated: "To establish a due process
violation under Brady, then, 'a defendant must show that: (1)
evidence was suppressed; (2) the suppressed evidence was
favorable to the defense; and (3) the suppressed evidence was
material to either guilt or punishment.'" United States v.
Pelullo, 399 F.3d 197, 209 (3d Cir. 2005), citing United States
v. Dixon, 132 F.3d 192, 199 (5th Cir. 1997) (citations omitted).
The government is not required under Brady to furnish a defendant
with information he already has or, with any reasonable
diligence, he can obtain for himself.  Id. at 213, quoting United
States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984).  For
example, when records seized from the defendant are made
available for inspection, the government has no duty under Brady
to identify or isolate specific documents that may be helpful to
the defense.  Similarly, with regard to documents in the public
domain, such as the SEC filings and NASD price and volume reports
in this case, Brady imposes no special duty of disclosure upon
the government, since these are equally available to, and within
the knowledge of, the defendant.  See United States v. Bloom, 78
F.R.D. 591, 620 (E.D. Pa. 1977).

    Defendant has pointed to no precedent suggesting that Brady
imposes due process obligations on the Government at the pre-
indictment stage.  The Supreme Court has strongly suggested that
the opposite is true.  In United States v. Ruiz, 536 U.S. 622,

630 (2003), the Court held that the government is not obligated
to produce material impeachment evidence prior to a guilty plea,
because "the Constitution, in respect to a defendant's awareness
of relevant circumstances, does not require complete knowledge of
the relevant circumstances, but permits a court to accept a
guilty plea, with its accompanying waiver of various
constitutional rights, despite various forms of misapprehension
under which a defendant might labor."   Id.

In the Third Circuit, the Court of Appeals rejected a motion
to withdraw a guilty plea to an indictment because of alleged
Brady violations, noting it is an open question whether Brady
requires disclosure of exculpatory information prior to entry of
a guilty plea to an indictment.   United States v. Brown, 250 F.3d
811, 816 n.1 (3d Cir. 2001).[4]   In the present case, however, Mr.

_____

[4] Where a defendant has been indicted, there is a split of
circuit court authority whether the Government must satisfy Brady
prior to entry of a Defendant's guilty plea.   Compare Sanchez v.
United States, 50 F.3d 1448 (9th Cir. 1995); United States v.
Wright, 43 F.3d 491 (10th Cir. 1994); Miller v. Angliker, 848
F.2d 1312 (2d Cir. 1988); White v. United States, 858 F.2d 416
(9th Cir. 1988); Campbell v. Marshall, 769 F.2d 314 (6th Cir.
1985) (each applying Brady to motion to withdraw post-indictment
guilty plea), with United States v. Conroy, 567 F.3d 174 (5th
Cir. 2009) (finding no Brady obligations before post-indictment
guilty plea).   Indictment triggers the Government's disclosure
obligations under Rule 16, and it is logical that the filing of
an indictment, containing the actual charges, also becomes the
starting point for the Government to turn over exculpatory
material to the defendant.   This split of authority need not be
resolved in the present case, however, because this motion arises
in the pre-indictment context.   Where there is no indictment,
there is no "starting point" triggering such duties to a target.
At what point, pre-indictment, would the Government be required
to comb its files and produce any helpful documents for the
defense of matters under investigation but not charged in an

26

Sgarlat faced no indictment, as he waived his right to indictment and pled guilty instead to the negotiated charges set forth in the Information.  Under such circumstances, it has been held that Brady requirements do not apply to pre-indictment plea negotiations, United States v. Smith, 824 F.Supp. 420, 424 (S.D.N.Y. 1993).

Similarly, the Seventh Circuit rejected the proposition that the government must provide any discovery to an unindicted subject of an ongoing investigation in United States v. Underwood, 174 F.3d 850, 854 (7th Cir. 1999).  In that case, a defendant under indictment agreed to plead guilty to a superseding indictment that added a new charge on which he had received no discovery, and he later moved to withdraw his plea arguing that he had received no discovery, and he later moved to withdraw his plea arguing that he had not had an opportunity to review the government's evidence, which he now felt was false, before pleading guilty.  The Seventh Circuit upheld the guilty plea, finding that "a guilty plea entered by a defendant who does not see the prosecution's hand in advance will still be voluntary if, as was true in this case, the plea follows disclosure of an adequate factual basis."  Id. at 854.  In the present case, as in Underwood, the defendant "was under no compulsion to negotiate with the government, and all he needed to do was wait for a

indictment?  No case has been found to apply Brady obligations at the pre-indictment stage to a motion to withdraw a plea of guilty to an information.

superseding indictment if in weighing his options he wanted to
assess the discovery that would become available under Rule 16."
Id.

In this case, Mr. Sgarlat gave up the rights associated with
indictment and trial.  He knowingly and voluntarily waived
indictment in writing, as established at the Rule 11 hearing.
(Tr. 9-8-60 at 2-3.)  The charges he elected to face in the
Information were themselves part of his plea negotiation and
agreement, as were the charges he would not have to face under
that agreement.  If Mr. Sgarlat wished to require the Government
to seek a true bill before a grand jury to assure there was
probable cause to indict him, he could have done so by not
waiving his indictment rights.  The fair trial rights protected
by Brady are among the many rights waived by an individual who
decides to waive indictment and plead guilty to an information.
It would make little sense, as a matter of due process, to hold
that the rights to pretrial discovery that were waived should
nonetheless govern the prosecution's obligations as if the right
to indictment and trial had not been waived as part of the
defendant's plea bargain.

Nor is this a case in which the government either coerced a
waiver of indictment or a guilty plea or actively misled the
defendant on the nature of its evidence on these charges.  All
parties recognized, at the time of the Rule 11 hearing, that no
formal discovery had been undertaken, although there were surely

informal exchanges of material information from the prosecutor.
The prosecution used no trick or deception to induce the guilty
plea, so far as the record discloses.  While a negotiated plea to
an information has many advantages for a defendant, it has, among
its disadvantages, the simple procedural fact that the United
States need never make discovery disclosures under Rule 16.  A
defendant accepts the benefits and the burdens of such a plea,
and there is nothing unfair about this compromise of rights and
obligations.

Moreover, the documents Defendant now lists as Brady
materials are not exculpatory of the crimes Defendant has
admitted.  The central allegations of Count One -- that Sgarlat
conspired to issue free-trading stock in eContent to persons who
performed no actual work for the company under "consulting
agreements" and that Sgarlat conspired to misuse eContent funds
for personal purposes -- are not contradicted by these documents.
That the free trading securities were issued improperly and that
Sgarlat, whether or not he later attempted reimbursement, in fact
used eContent funds for his own personal purposes, is undermined
by none of the items.  Similarly, nothing refutes the essential
money-laundering charge in Count Two that the money of investors
in Branded Media Corp. and Fishing World Media Corp. were
concealed in the Convergiton account and were withdrawn by
Sgarlat to spend on his own personal needs.  It is not material
to this charge that Branded Media and Fishing World Media may

29

have been worthy investments, because Sgarlat never disclosed that these investment monies would be used for his own personal gratifications.

Other records were made available prior to the guilty plea, such as Sgarlat's own bank records showing partial refunds to two investors.  That the alleged <u>Brady</u> material documents -- the private placement memoranda for these investments -- discloses some risks does not permit the Defendant, as the person soliciting their investment, to use their money to purchase to purchase narcotics.  (<u>See</u> Gov't Opp. Br., Ex. N.)  Such documents are not exculpatory within <u>Brady</u>.  No constitutional violation has occurred under <u>Brady</u>.

Finally, the Court notes that it is not necessary for the Defendant to prove a constitutional violation in order to receive leave to withdraw his plea of guilty.  The standard under Rule 11(d)(2)(B) is not necessarily of constitutional dimension, since the defendant needs to show "a fair and just reason for requesting the withdrawal."  Rule 11(d)(2)(B), Fed. R. Crim. P. If the government's treatment of the Defendant, though not rising to a constitutional due process violation, was fundamentally unfair, then justice would require the plea to be set aside and the case set for trial.  After review of the Defendant's allegations and the Government's rebuttals, this Court does not believe that the prosecution has treated Defendant Sgarlat in a manifestly unfair manner.  It was Mr. Sgarlat, rather than the

prosecutor and investigators, who was in the best position to determine whether documents helpful to his cause existed, given the rather Byzantine nature of his business dealings and the frauds alleged.  Through a change of heart, and through a high-volume critique of the prosecutor, the Defendant has not shown a just reason to set aside his decision to plead guilty based on any aspect of the Government's conduct in withholding production of pre-indictment discovery that it was not obliged to give.  The Government is entitled to play hard, as long as it plays fair, which it has done, to this Court's satisfaction, in this case.

### E.   Whether the Government would be Prejudiced by Withdrawal of Plea

The motion under Rule 11(d)(2)(B) also requires consideration whether withdrawal of the guilty pleas would cause undue prejudice to the Government.  The Government was prejudiced by the passage of time between the Defendant's plea of guilty on September 8, 2006 and the filing of this motion on the eve of sentencing in late October, 2007.  As explained by AUSA Schweiker, the Government geared down its investigations of this and related matters, such as Mr. Sgarlat's participation in Convergiton, Branded Media, Fishing World Media, and federal income tax offenses, when it became plain that Sgarlat would enter the guilty pleas.  Due to passage of time, the Government may be impaired in concluding those investigations and seeking indictments.  Also, Defendant waited to seek to withdraw his plea

until after the Probation Department disclosed the draft and final presentence investigation reports.  Meanwhile, the Government had disclosed to the Probation Department and to the Defendant, aspects of its investigation and proofs on these matters that the Defendant was not otherwise entitled to receive,[5] in reliance on Defendant's guilty pleas.

Further, where, as in this case, Mr. Sgarlat has not made a substantial showing of assertion of innocence or strength of reasons for withdrawal, the Court need not consider further the prejudice to the Government.  United States v. Jones, 336 F.3d at 255.  Nonetheless, it is apparent that a withdrawal would cause more than the usual difficulties for the Government, and that this factor also cuts against granting Defendant's motion.


**IV.**   **CONCLUSION**

For the reasons stated above, this Court will deny Defendant John P. Sgarlat's motion to withdraw his guilty plea.  The accompanying Order will be entered.


**March 31, 2010**                         **s/ Jerome B. Simandle**
Date                                       Jerome B. Simandle
                                           U.S. District Judge

----

[5] Another potential source of prejudice to the Government is the death of a key witness, John Serubo, in 2009 while this motion was pending.  See Gov't Letter of September 28, 2009. Because Mr. Serubo's death occurred after this motion was filed, the Court will not consider this potential prejudice.