```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>JOHN P. SGARLAT,<br><br>           Defendant. | Criminal No. 06-723-01 (JBS)<br><br>**MEMORANDUM OPINION AND<br>ORDER DISQUALIFYING<br>DEFENSE COUNSEL** |

**SIMANDLE**, District Judge:

    This matter is before the Court on the motion of the United States to disqualify defense counsel, Simon Kogan, Esq. [Docket Item 43], supplemented by the letter of AUSA Eric Schweiker dated June 8, 2010 [Docket Item 76].  On June 9, 2010, the Court held a hearing at which it heard argument and took testimony to determine whether, as the government alleged, Mr. Kogan was simultaneously representing both Defendant John Sgarlat (hereinafter, "Defendant Sgarlat") and several victims of Defendant Sgarlat's criminal conduct.  At that hearing, Defendant Sgarlat was also represented by his brother, attorney Michael Sgarlat, Esq.  After receiving additional time to address these issues, neither Mr. Kogan nor Defendant Sgarlat oppose this motion, and Mr. Kogan asks that the Court grant him leave to withdraw his appearance [Docket Item 79].

    1.  The Court finds that, beginning sometime in March 2010, Mr. Kogan was simultaneously representing Defendant Sgarlat and two of the victims of Defendant Sgarlat's crime, such that there

was an actual conflict that cannot be waived by Defendant Sgarlat.

2. Defendant John Sgarlat pled guilty, among other things, to the offense of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), when he accepted investments from various victims, deposited the proceeds into an account he controlled in the name of Convergiton, Inc., and withdrew the funds for his own personal use rather than investing the money, as intended by the victims, in companies known as Branded Media Corp. and Fishing World Media, Inc. His sentencing was scheduled for June 9, 2010 when these disqualification issues were presented.

3. In March, 2010, Mr. Kogan and Defendant Sgarlat began recruiting Sgarlat's victims to join in a civil lawsuit against former Branded Media principals, purportedly designed to help the victims recoup the money they had invested through Sgarlat in Defendant Sgarlat's company Convergiton. At least three of Defendant Sgarlat's victims have signed a retainer with Mr. Kogan's law firm.

4. In a related effort to communicate with Sgarlat's victims, Kogan knew that Sgarlat also prepared unsolicited mailings to solicit their participation in a civil suit against others involved in Fishing World Media. (Gov't Exh. W.) That document urged recipients to sign up with Attorney Simon Kogan

and gave Kogan's phone number, and it did not state that Kogan represents Sgarlat in this criminal case.  (Id.)

     5.  Sometime close to March 19, 2010, Defendant Sgarlat and Mr. Kogan asked Scott Alexander and John Costanza, both victims of Defendant Sgarlat's money laundering scheme, to attend a meeting in New York City with Mr. Kogan and Defendant Sgarlat to discuss the suit against Branded Media.  At least Mr. Alexander signed a retainer agreement with Mr. Kogan's law firm.  Mr. Alexander testified that he believed other attorneys at the firm would handle the case, though the only attorney he met with was Mr. Kogan.  Mr. Kogan drafted a letter to United States Attorney Paul Fishman that Mr. Costanza and Mr. Alexander signed, complaining about the U.S. Attorney's failure to bring criminal charges against Branded Media principals.  Mr. Kogan did not tell Mr. Alexander or Mr. Costanza that the men might also have a claim against Defendant Sgarlat, nor did he explain Defendant Sgarlat's criminal role in the loss of their investments.  At the hearing on June 9th, upon learning about Defendant Sgarlat's crimes, Mr. Costanza testified that he would ask for restitution from Defendant Sgarlat.  Not only did Mr. Kogan represent these victims, but he solicited other victims in an attempt to obtain compensation for losses caused at least in large part by Sgarlat.

     6.  As an attorney admitted pro hac vice before this Court, Mr. Kogan, although a member of the New York bar, is also subject

to the Rules of Professional Conduct ("RPC") as adopted by the Supreme Court of New Jersey, see L. Civ. R. 103.1(a), made applicable to criminal cases by L. Cr. R. 1.1.  The relevant ethical rule is contained in RPC 1.7(a) & (b), which states as follows:

>(a)  Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>(1) the representation of one client will be directly adverse to another client; or
>
>(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
>(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>(1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation. When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;
>
>(2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
>(3) the representation is not prohibited by law; and
>
>(4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

7. In State ex rel. S.G., 814 A.2d 612 (N.J. 2003), the Supreme Court of New Jersey held that a law firm may not simultaneously represent both a criminal defendant and the victim of that defendant where there is an actual conflict under RPC 1.7, regardless of the defendant's willingness to waive the conflict. This was true despite the fact that the victim was dead. The Supreme Court found that the defendant and the victim had adverse interests, even though the concurrent representation involved different matters, because the victim had an interest in seeing his alleged attacker brought to justice and because the victim had a potential civil claim against the defendant. Id. at 618-19. The criminal defendant could not cure the conflict by waiver. Id. at 619. The Court stated: "Given the actual conflict that existed in this case and the obligation to ensure that defendant receives a fair trial, S.G.'s proffered consent is immaterial because an actual and direct conflict may not be waived in this setting." Id.

8. Similarly in this case, Defendant Sgarlat and his victims have adverse interests, for Sgarlat's victims may seek (and in the case of Mr. Costanza are seeking) restitution against Sgarlat in the criminal matter and may also have a civil claim against him.[1] Also, in the proposed civil action against the

---

[1] Indeed, as Attorney Kogan and Defendant Sgarlat well know, at least 12 victims of Sgarlat's Convergiton scheme in Count Two have claimed restitution in amounts totaling $238,083.00, the exact amounts and entitlements to be determined at sentencing.

5

Branded Media officers and Fishing World principals, it would appear certain that those defendants would file a third-party claim against John Sgarlat, since he is the person who admitted he took the victims' money.  Moreover, unlike in S.G., all the parties are living and the subject of the representation in both the instant criminal matter and the proposed civil suits -- the victims' investment through Sgarlat in Convergiton -- is the same.

    9.   Therefore, the Court finds that there is an actual conflict that cannot be waived under RPC 1.7.  The Court will grant the government's motion to disqualify Mr. Kogan as defense counsel for Defendant Sgarlat due to Mr. Kogan's violation of RPC 1.7.

    WHEREFORE IT IS, this   **16th**  day of **June, 2010**, hereby

    ORDERED that the motion of the United States to disqualify defense counsel Simon Kogan, Esq., shall be, and hereby is, **GRANTED.**

                                    **s/ Jerome B. Simandle**
                                    JEROME B. SIMANDLE
                                    U.S. District Judge