IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                              :
JOHN P. SGARLAT,              :
                              :        Civil No. 11-4441 (JBS)
              Petitioner,     :        [Crim. No. 06-723 (JBS)]
        v.                    :
                              :             OPINION
UNITED STATES OF AMERICA,     :
                              :
              Defendant.      :
                              :
```

APPEARANCES:

John P. Sgarlat, Pro Se
#41166-050
F.C.I. Beckley Camp
Box 350
Beaver, WV 25813
        Petitioner

Eric M. Schweiker, Assistant U.S. Attorney
OFFICE OF THE US ATTORNEY
402 East State Street, Room 430
Trenton, NJ 08608

-and-

R. Stephen Stigall, Assistant U.S. Attorney
OFFICE OF THE US ATTORNEY
401 Market Street
P.O. Box 2098
Camden, NJ 08101
      Attorneys for Respondent

**SIMANDLE,** Chief District Judge:

## I. INTRODUCTION

This matter comes before the Court on Petitioner John
Sgarlat's petition to vacate, set aside, or correct sentence,
filed pursuant to 28 U.S.C. § 2255, on the grounds of ineffective
assistance of counsel and new exonerating evidence. [Docket Item

1.] Petitioner, a federal prisoner who pled guilty to conspiracy to commit securities and wire fraud ("Count One"), and money laundering ("Count Two"), argues that his successive attorneys, Harold Shapiro, Esq., and Simon Kogan, Esq., were ineffective in myriad ways, including "abandon[ing] the possibility of a defense" at an early stage [Pet. ¶ 22 at 11.], failing to bring material facts to the attention to the Court in various proceedings [id. ¶ 17 at 15, ¶ 3 at 25, ¶ 5 at 26], and failing to recognize a Statute of Limitations defense. [Id. ¶¶ 75-77 at 25.] Petitioner also asserts that recordings within the possession of the FBI will exonerate him as to the conspiracy count. [Id. ¶ 33 at 17.] Respondents argue that counsel was not ineffective and the evidence Petitioner describes is not exonerating. [Answer at 5, 9-10.] For the reasons explained below, the Court denies Petitioner's motion to vacate, set aside, or correct sentence.

## II. Background

The facts of this case have been described in previous opinions of this Court. See United States v. Sgarlat, 705 F. Supp. 2d 347, 349-50 (D.N.J. 2010). The Court will recount only those facts relevant to the present petition.

On September 28, 2005, Petitioner Sgarlat, who was under investigation for securities fraud, wire fraud and tax evasion, supplied a written confession to agents of the FBI and began

2

cooperating with the government.[1] Because Petitioner was the target of an ongoing investigation and claimed indigence, in December 2005, the Court appointed Mr. Shapiro as his counsel. Petitioner and Mr. Shapiro met for the first time in early January 2006,[2] and they quickly set up a proffer session with prosecutors for January 18, 2006. [Pet. ¶ 3 at 9.] Soon thereafter, Petitioner was arrested and charged, and eventually pled guilty to both counts on September 8, 2006, on the advice of Mr. Shapiro. [Pet. ¶ 9 at 20, ¶ 39 at 12.] Prior to sentencing, Mr. Sgarlat retained a new attorney, Simon Kogan, a member of the New York bar, who had previously assisted Mr. Sgarlat in securities matters, in place of Mr. Shapiro.

Later, Petitioner, with Mr. Kogan as his attorney, moved to withdraw his guilty plea on the grounds of (1) ineffective assistance of counsel by Mr. Shapiro, (2) detrimental reliance on advice of counsel, (3) a statute of limitations defense, (4) his conduct did not constitute a violation of the statutes, and (5) exculpatory evidence. The Court conducted an evidentiary hearing and found that Petitioner's guilty plea was knowing and voluntary, see Sgarlat, 705 F. Supp. 2d at 353, that counsel was not ineffective, id. at 355-57, that counsel was correct not to

---

[1] Petitioner, in his Reply Brief, purports to describe in detail the circumstances of his confession, which he argues was coerced and involuntary. [P.R. Br. at 31-32, P.R. Br. Ex. A.] This allegation will be discussed, infra part III.

[2] Petitioner refers to the date, alternately, as January 7, 2006 (P.R. Br. ¶ 8 at 10), and January 8, 2006 (Pet. ¶ 6 at 9).

press a statute of limitations defense, id. at 356, and that Petitioner did not present facts or evidence that was exculpatory or that his conduct did not constitute a violation of the statutes, id. at 357-60. The Court denied Petitioner's motion to withdraw his guilty plea. Id. at 361.

Petitioner was sentenced on August 5, 2010. [Cr. No. 06-0723, Docket Item 91.] At sentencing, Sgarlat fully accepted responsibility for his crimes in Counts One and Two and presented a case for extraordinary acceptance of responsibility through post-conviction rehabilitation. He laid out, in detail, his remorse for committing the crimes he pled guilty to, apologized profusely to his victims, and demonstrated a firm resolve to amend his life through helping others to overcome addiction, to which numerous witnesses on his behalf also attested. Because of his seemingly extraordinary remorse and rehabilitative efforts, this Court granted a substantial variance at sentencing. The advisory Sentencing Guideline range, determined by Offense Level 30, Criminal History Category I, was 97 - 121 months. The Court's variance of four levels reduced this range to 63 - 78 months, and the Court imposed concurrent sentences of 60 months on Count One (the statutory maximum) and 66 months on Count Two. Petitioner did not directly appeal the denial of his motion to withdraw his guilty plea, nor his conviction, nor his sentence.

Petitioner timely brought the current action, alleging five grounds that he argues entitle him to relief. [Civ. No. 11-4441,

4

Docket Item 1.] First, Petitioner argues that Mr. Shapiro too hastily concluded that Petitioner was guilty and never explored a defense strategy for him ("Ground One"). [Pet. ¶¶ 37-42 at 12.] Second, Petitioner argues that his confession to the FBI was involuntary, that the FBI withheld facts concerning the confession and Petitioner's counsel was ineffective for failing to bring these facts to the attention of the Court ("Ground Two"). [Id. ¶¶ 14-17 at 14-15.] Third, Petitioner asserts the government possesses recordings of Petitioner declining to engage in securities fraud or implicating himself in a conspiracy, which Petitioner says exonerates him of Count One ("Ground Three"). [Id. at ¶ 33 at 17, ¶ 41 at 18.] Fourth, Petitioner asserts actual innocence of Count One,[3] and alleges that the FBI "fabricated . . . lie[s]" and filed "fraudulent" information to circumvent a statute of limitations defense, and his attorneys were negligent and ineffective for not recognizing this before

---

[3] Petitioner's "Ground Four" can be read as asserting actual innocence of Count One as well as an ineffective assistance claim arising from the statute of limitations defense. Petitioner does not assert actual innocence of Count Two. See Pet. at 28 ("COUNT TWO is a different story. I betrayed beloved family members and my closest friends by using funds entrusted to me to feed my addiction to alcohol and cocaine. I deserve to be harshly punished for this."). Petitioner is serving 66 months for Count Two concurrently with a sentence of 60 months for Count One. Vacating the sentence of Count One would not end Petitioner's incarceration. However, the fact that Petitioner admits guilt on Count Two does not preclude this Court's review of his other claims. The concurrent sentence doctrine is discretionary, not jurisdictional, and the Third Circuit has declined to apply it on review of a federal habeas corpus claim. Kendrick v. Dist. Attorney of Cnty. of Philadelphia, 488 F.3d 217, 219-220 (3d Cir. 2007).

instructing him to plead guilty and for not bringing this
information to the attention of the Court ("Ground Four"). [Id.
¶¶ 1, 4-5 at 19.] Fifth, Petitioner argues that Mr. Kogan was
ineffective for not providing the Court facts supporting Grounds
One or Four ("Ground Five"). [Id. ¶ 3 at 25, ¶ 5 at 26.] In his
reply brief, Petitioner appears to add a sixth ground, that the
involuntary confession to the FBI in 2005 poisoned the rest of
the FBI's case, and his sentence should be vacated because of the
constitutional violation. [P.R. Br. at 51.]

## III. Discussion

Under § 2255(a), a federal prisoner may move to vacate, set
aside or correct a sentence on the ground that the sentence was
imposed in violation of the Constitution or federal law, the
sentencing court was without jurisdiction, or the sentence is in
excess of the maximum authorized by law or is otherwise subject
to collateral attack. If the motion, files and records of the
case conclusively show that the prisoner is not entitled to
relief, the petition will be denied. § 2255(b). Otherwise, the
court shall grant a hearing to determine the issues and make
findings of fact and conclusions of law. Id.

Not every asserted error of law may be raised on a § 2255
motion. See Davis v. United States, 417 U.S. 333, 346 (1974). The
appropriate inquiry is whether the claimed error is a
"fundamental defect which inherently results in a complete
miscarriage of justice" and whether it presents "exceptional

circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id., quoting Hill v. United States, 368 U.S. 424, 429 (1962).

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that (1) counsel's performance was so deficient as to deprive him of the representation guaranteed to him under the Sixth Amendment of the United States Constitution, and (2) the deficient performance prejudiced the defense by depriving the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984). The Sixth Amendment right to counsel also extends to the plea-bargaining process. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). To show prejudice under Strickland, Petitioner must demonstrate that there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Gov't of the V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989) (quoting Strickland, 466 U.S. at 694).

The Court will consider Petitioner's arguments in turn.

**A. Abandoning Petitioner's defense**

Petitioner first argues that Mr. Shapiro as his counsel "never explored a defense for me or offered me the option of a defense" but rather abandoned any defense strategy and instructed Petitioner to plead without "any due diligence" and before receiving the government's evidence. [Pet. at 9, ¶ 6 at 9, ¶ 38 at 12.] Petitioner asserts that Mr. Shapiro did not offer him an

option to force the government to seek an indictment, that Mr.
Shapiro did not discuss Petitioner's rights regarding discovery
at trial, and that Mr. Shapiro did not consult with key witnesses
or review relevant cases prior to making legal recommendations.
[Id. ¶¶ 13-14 at 10, ¶ 22-24 at 11.] Petitioner also argues that
Mr. Kogan was ineffective for failing to bring these facts to
light when Petitioner moved to withdraw his guilty plea. [Id. ¶
19 at 10, ¶ 39 at 12.]

    The government responds that the Court considered and
rejected the allegation of ineffective assistance of counsel
concerning Mr. Shapiro's conduct leading up to Petitioner's
guilty plea. [Answer at 5-6.] The record revealed Petitioner's
knowing and voluntary decision to plead guilty and his knowledge
of his right to plead not guilty and proceed to trial. [Id. at
6.] Mr. Shapiro testified that Petitioner raised the issue of
entering a plea of not guilty and discussed it with him. [Id.]
The government concludes that Petitioner was aware of his rights
to proceed to trial. [Id.]

    In his reply brief, Petitioner concedes that he was aware of
his right to proceed to trial and that he was not coerced to
plead guilty. [P.R. Br. ¶ 1 at 13, ¶ 5 at 14.] However,
Petitioner argues that his decision to plead guilty was
uninformed, because Mr. Shapiro failed to review thoroughly a
"large box" of evidence provided by the Petitioner, and Mr.
Shapiro failed to consider whether Petitioner's arrest warrants

8

were unconstitutional on the ground that they were obtained as a result of an unconstitutional confession in a custodial interrogation setting without <u>Miranda</u> warnings.[4] [P.R. Br. ¶ 8 at 10, P.R. Br. at 36.]

---

[4] Petitioner filed a reply brief [Docket Item 20] that was more than 40 typed pages, longer than any brief permitted under L. Civ. R. 7.2(b) and significantly longer than the page limit for a reply brief. However, treating <u>pro se</u> submissions leniently, the Court will consider Petitioner's arguments.

Petitioner for the first time in his reply brief describes facts that might tend to show his confession occurred in a custodial interrogation setting. [P.R. Br. at 31-32.] When Petitioner previously challenged the voluntariness of his confession, he attacked it on the ground that he was intoxicated and high on cocaine. <u>Sgarlat</u>, 705 F. Supp. 2d at 356-57. In the current petition, Petitioner alleges the confession was made "under the influence of narcotics, alcohol, and duress on September 28, 2005." [Pet. ¶ 30 at 11.] The Court will interpret <u>pro se</u> Petitioner's allegation of "duress" as properly raising the custodial interrogation argument, which he described in detail only in the reply.

Describing the events of September 28, 2005, Petitioner asserts that an undercover agent "lured" him to New Jersey from Florida and drove Petitioner "to an undisclosed location and escorted him into an isolated hotel room" for interrogation. [P.R. Br. at 31.] Two more federal agents "stormed into the room like a SWAT team, flashing their badges and screaming that they were going to 'put the Petitioner in jail for twenty-five years.'" [<u>Id.</u>] Petitioner pleads he was drunk and "too frightened to move" and "not capable of fighting his way through three hostile, armed federal agents to reach the door." [<u>Id.</u> at 31-32.] One agent seized three grams of cocaine from Petitioner. [<u>Id.</u> at 32.] The interrogation lasted almost four hours, and agents made Petitioner various promises to encourage him to sign the confession. [<u>Id.</u>] Petitioner asserts that the agents were hostile and physically intimidating. [<u>Id.</u>, P.R. Br. Ex. B ¶ 44 at 4.] Petitioner also asserts that at one point, "I slipped onto the balcony and leaned over the rail. I was determined to commit suicide." [<u>Id.</u> Ex. A ¶ 34 at 3.]

Because this description was raised in Petitioner's reply, the government did not respond to these allegations. However, as the Court explains, even accepting these brand new allegations as true does not entitle Petitioner to relief.

In deciding Petitioner's motion to withdraw his guilty plea, the Court already evaluated the validity of the plea and whether Petitioner's counsel was ineffective under the governing standard announced in Strickland and concluded the plea was knowing and voluntary and Mr. Shapiro's legal advice reflected a reasoned tactical decision. Sgarlat, 705 F. Supp. 2d at 353, 355-57. To the extent that Petitioner presents a different argument here, Petitioner seems to object to the timing of Mr. Shapiro's conclusion and advice, given the evidence he did not have time to review, as well as Mr. Shapiro's failure to recognize that Petitioner's confession could be challenged at trial on the ground of failure to give Miranda warnings. [P.R. Br. at 41.] Neither of these arguments persuade the Court that an evidentiary hearing would generate findings that could entitle Petitioner to relief.

The timing with which Mr. Shapiro arrived at his conclusions and recommendations does not change the Court's assessment of Petitioner's plea, in light of Mr. Shapiro's reasoned strategy, Petitioner's numerous interactions with him and the government, and Mr. Shapiro's ability to convince the government to drop otherwise valid charges against Petitioner. See Sgarlat, 705 F. Supp. 2d at 357 ("Overall, Mr. Shapiro's advice was sound and well-informed. He recommended Defendant's acceptance of a very fair plea agreement . . . ."). The Court already determined that, substantively, Mr. Shapiro's recommendation that Petitioner plead

guilty was competent advice. It remains clear that Mr. Shapiro's ultimate recommendation was well within the accepted range of professional conduct contemplated in Strickland. Additionally, the Court is satisfied that Petitioner's plea was knowing and voluntary. See Sgarlat, 705 F. Supp. 2d at 353-54 ("The Court ascertained [Petitioner] was aware of his Constitutional rights to plead not guilty and to go to trial by jury . . . [T]he Court easily found that his decision to waive all these rights and protections was knowing and voluntary."). The Court need not conduct an evidentiary hearing on this matter.

The Court did not previously consider the possibility that the September 28, 2005, confession could be challenged on the ground that Miranda warnings were not given in a custodial interrogation setting, because Petitioner did not make this argument.[5] However, in denying Petitioner's motion to withdraw his guilty plea, the Court noted that challenging the admissibility of the confession carried risk for the Petitioner, including the possibility that (1) the Court would deny the motion, (2) the motion could succeed but other testimony could supply evidence against Sgarlat and (3) Petitioner would not receive the benefit of a favorable plea agreement if he

---

[5] In his previous submission to the Court, in his motion to withdraw a plea of guilty, Petitioner admitted he "could not accurately recall what transpired" during his confession due to his intoxication. [Cr. No. 06-0723, Docket Item 38 at 4.] He does not explain how these details of his interrogation in 2005 that had eluded him in 2007-2008 became clear to him in filing this petition in 2011.

challenged the confession at trial and might face additional criminal charges. <u>Sgarlat</u>, 705 F. Supp. 2d at 356-57. Instead, Sgarlat manifestly accepted responsibility for his crimes in his lengthy Rule 11 hearing and in his written plea agreement, as previously found. He emphasized his acceptance of responsibility, his remorse for hurting so many victims, and his firm efforts to amend his life and to stop lying to himself and others at the time of his sentencing, and in fact earned a decreased sentence due to his seemingly sincere remorse, as discussed above.

Assuming, <u>arguendo</u>, that the interrogation was made in a custodial setting without <u>Miranda</u> warnings, Petitioner faced similar risks challenging the admissibility of his confession. In weighing the decision to enter a guilty plea, Mr. Shapiro and Petitioner had to consider not only the content of the confession, but the content of Petitioner's proffer and other admissions to the government over several months of Petitioner's cooperation,[6] Petitioner's own knowledge of his conduct and potential evidence against him, the testimony of potential government witnesses and the consequences of pleading not guilty and facing additional criminal charges. Petitioner concedes that "Mr. Shapiro himself was not aware that the inadmissible confession was used to secure the warrants . . . ." [P.R. Br. ¶ 5 at 9.] Even if Mr. Shapiro had been, or should have been, aware

---

[6] <u>See</u> <u>Sgarlat</u>, 705 F. Supp. 2d at 354 (noting Petitioner's "expanded admission in three debriefings with the FBI" following the September 2005 confession).

of a potential defect in the warrants or a constitutional challenge to Petitioner's confession, Mr. Shapiro made a tactical recommendation, based on many factors, to proffer and, later, plead guilty, which appears reasonable, even with the benefit of hindsight. Mr. Shapiro's conduct under these circumstances was within "the wide range of professional competent assistance . . . ." Strickland, 466 U.S. at 690.

Petitioner argues that but for the unconstitutional confession, the government would not have obtained a warrant and would not have arrested Petitioner, eliminating any guilty plea and sentence. [P.R. Br. ¶ 3 at 9.] The Court does not share Petitioner's certainty of this alternate chain of events. As Petitioner points out, he was not arrested until one month after his proffer. [Pet. ¶¶ 8-9 at 20.] And although Petitioner now argues that counsel was deficient in recommending and setting up the proffer, P.R. Br. ¶¶ 8-9 at 10, P.R. Br. at 41, the record shows that Mr. Shapiro had a "long detailed discussion" with Petitioner about the proffer process and its benefits and consequences and Petitioner "was committed to . . . do[ing] the proffer." [Answer Ex. B at 12:7-24.] If Petitioner even had a Sixth Amendment right to counsel at the time of the proffer,[7] Mr.

---

[7] The Sixth Amendment right to counsel attaches at all critical stages of criminal proceedings, in other words, "at or after the initiation of adversary judicial criminal proceedings–whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Texas v. Cobb, 532 U.S. 162, 167-68 (2001) (quoting McNeil v. Wisconsin, 501 U.S. 171, 175 (1991)). The Supreme Court last term held that defendants

Shapiro's conduct was competent. Mr. Shapiro advised his client of the risks and benefits if the course of action, and used the proffer as part of his strategy to reach a favorable plea agreement with the government. Even now, Petitioner does not contest his guilt for Count Two, and Mr. Shapiro's recommendation that Petitioner cooperate with the government as part of a strategy to have other potentially valid criminal charges dropped is competent assistance of counsel. See Pet. at 28 ("I deserve to be harshly punished for [Count Two]").

Petitioner cannot argue that the proffer itself was tainted by his allegedly unconstitutional confession. Petitioner's arrest and guilty plea stemmed not only from his confession but from his voluntary proffer and other information the government gathered in its investigation of Petitioner. Thus, Petitioner has not raised arguments related to Mr. Shapiro's performance that require an evidentiary hearing, because a hearing on these issues could not reveal facts that demonstrate ineffective assistance of counsel that prejudiced Petitioner's case.

---

have a Sixth Amendment right to counsel that extends to the plea-bargaining process. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012). The Supreme Court further explained that "[c]ritical stages include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea." Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012). The Sixth Amendment, then, does not appear to attach at the time of proffer prior to criminal charges, but the Court need not decide that issue. Here, Mr. Shapiro's advice to Petitioner about the proffer was competent.

Finding Mr. Shapiro's assistance of counsel competent forecloses Petitioner's other arguments. If Mr. Shapiro's representation was competent, Mr. Kogan's assistance of counsel was not ineffective for failure to bring to the Court's attention this additional group of alleged failings of Mr. Shapiro. Bringing to light these allegations would not have altered the analysis of Petitioner's motion to withdraw his guilty plea. Similarly, as Mr. Shapiro properly decided not to challenge Petitioner's confession, Mr. Kogan was not ineffective for failing to inform the Court about the circumstances of the confession.

### B. Unconstitutional confession

In "Ground Two," Petitioner argues that the FBI did not disclose his "highly intoxicated, visibly stoned condition" at the time of his confession and the FBI dictated Petitioner's confession. [Pet. ¶¶ 14-15 at 14.] The FBI's concealment of this fact, Petitioner asserts, is a "fundamental defect[] in the Government's case" and opens up Petitioner's sentence to "collateral attack." [Id. ¶ 15 at 14.] Petitioner also argues ineffective assistance of counsel for not challenging the confession. [Id. ¶¶ 16-17 at 15.]

The government responds that Mr. Kogan did raise this argument at the motion to withdraw the plea of guilty. [Answer at 7.] The government further notes that Mr. Shapiro considered the

merits of a motion to suppress the confession but advised the Petitioner that a guilty plea was in his best interest. [Id.]

Petitioner shifts his argument in reply, responding that counsel did not properly raise this argument before the Court, because they did not make an argument about the lack of Miranda warnings. [P.R. Br. ¶ 2 at 15.] Petitioner alleges that Mr. Shapiro lied under oath when he testified that he considered the merits of suppressing the confession. [Id. ¶ 3 at 15.]

As the Court explained in denying Petitioner's motion to withdraw his guilty plea, challenging the confession would have exposed Petitioner to risk, and counsel made a defensible, strategic decision to recommend a guilty plea in exchange for the government to drop potential charges against Petitioner in the negotiated plea agreement. Sgarlat, 705 F. Supp. 2d at 356-57. As explained above, challenging the confession on another ground - lack of Miranda warnings - does not alter significantly the strategic calculation facing Petitioner and counsel. Recommending a guilty plea, even if Petitioner's confession might be deemed inadmissible, was a reasonable, competent recommendation, given Petitioner's admissions given to the government in several sessions and other potential evidence against Petitioner developed by the FBI's investigation of Sgarlat and others.

Additionally, the law is settled that an inadmissible confession cannot be grounds for overturning a guilty plea entered voluntarily and intelligently, when advised by competent

16

counsel.[8] <u>United States v. Callahan</u>, 659 F. Supp. 80, 83 (E.D. Pa. 1987), <u>aff'd</u>, 826 F.2d 1057 (3d Cir. 1987). "[W]hen a defendant pleads guilty upon the advice of competent counsel, he waives prior constitutional infirmities and 'assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts.'" <u>United States ex rel. Davis v. Johnson</u>, 495 F.2d 335, 341 n.11 (3d Cir. 1974) (quoting <u>McMann v. Richardson</u>, 397, U.S. 759 (1970)). Having concluded that counsel was competent in recommending a guilty plea, and finding that Petitioner's guilty plea was voluntary and knowing, <u>see, e.g.</u>, <u>Sgarlat</u>, 705 F. Supp. 2d at 533 (describing "one of the most thorough factual recitations any defendant has given at a Rule 11 hearing in this Court's experience. Mr. Sgarlat answered dozens of questions detailing his guilt on these two counts.")[9], Petitioner is foreclosed from overturning his guilty plea on the ground of an inadmissible confession. The Court will deny the request to hold an evidentiary hearing on this ground.

## C. Exonerating recordings

Petitioner argues that the FBI recorded a conversation between Petitioner and his friend John Serubo, who was

---

[8] Petitioner seems to raise this argument as an independent ground for vacating his sentence for the first time in his reply brief. [P.R. Br. at 51.]

[9] It bears repeating that Sgarlat entered his plea of guilty during the course of a lengthy hearing, consuming 52 transcript pages of answering dozens of questions admitting his factual guilt to Counts One and Two, on September 8, 2006. Any suggestion that he is actually innocent of these crimes is a delusion.

17

cooperating with the government, in an attempt to link Petitioner to a "Pump and Dump" stock scheme. [Pet. ¶ 15 at 16.] Petitioner asserts that he denied any involvement and did not know the individuals who were behind the stock scheme. [Id. ¶¶ 17-19 at 16.] Petitioner argues that the FBI's failure to "link or lure" him into a conspiracy to commit securities fraud undermines confidence in the outcome of his case. [Id. ¶¶ 38-39 at 18.]

The government responds that Petitioner's claim of actual innocence is not cognizable under § 2255 because federal collateral review is meant "to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of facts." [Answer at 8 (quoting Herrera v. Collins, 506 U.S. 390, 400 (1993)).] In the alternative, the government argues that the evidence does not tend to show Petitioner's actual innocence. [Answer at 9.]

Petitioner attempts to allege a Constitutional violation, but he does not articulate a specific provision or generally describe the right infringed. [Pet. ¶ 51 at 19 ("The FBI chose to suppress evidence in distinct violation of my Constitutional rights.")] However, assuming the claim is cognizable, the recordings described by Petitioner simply are not exonerating evidence, even if they exist as alleged and their contents accurately reflect Petitioner's description. The question of whether Petitioner failed to confess to a crime in a surreptitiously recorded conversation or declined to participate

18

in another proposed criminal scheme simply is wholly independent
of whether Petitioner, on other occasions, committed criminal
acts or confessed to those acts. The recordings, if presented at
trial, may have weighed in Petitioner's favor in the minds of a
jury, but the evidence certainly is not dispositive of
Petitioner's guilt or innocence, and Petitioner gave up his right
to a trial when he pled guilty. Because the described recordings
could not tend to show Petitioner's actual innocence, an
evidentiary hearing on this ground would be futile.

**D. Factual innocence and ineffective assistance on a statute
of limitations defense**

Petitioner makes several claims under "Ground Four." He
appears to make the argument that he is actually innocent of
Count One, but here, unlike "Ground Three," Petitioner does not
argue that he has new evidence that could not have been
discovered at the time of his guilty plea or that the
government's conduct violated his Constitutional rights or
federal law. Nor does Petitioner's claim point to a complete
miscarriage of justice. Petitioner never challenged his sentence
or rulings of this Court on direct appeal.

Insofar as Petitioner alleges factual innocence in "Ground
Four," based upon neither newly discovered evidence nor error of
a constitutional dimension following an guilty plea that was not
challenged on direct appeal, his petition must be denied. See
Herrera, 506 U.S. at 400; House v. Bell, 547 U.S. 518, 555 (2006)

19

("the threshold for any hypothetical freestanding innocence claim [i]s 'extraordinarily high.'"); Simmons v. United States, 302 F.3d 71, 78 (3d Cir. 1962) ("A motion under § 2255 may not be substituted for the appropriate appellate procedure, unless there has been a deprivation of constitutional rights so fundamental as to amount to a denial of a fair trial."); Bontkowski v. United States, 850 F.2d 306, 313 (7th Cir. 1988) ("non-constitutional errors which could have been raised on appeal but were not, are barred on collateral appeal"). His claim of factual innocence fails upon the record of admissions of his guilt, falling far short of the high burden for entertaining such a claim, including copious statements of his guilt of these crimes, his remorse, and he rehabilitation at the time of his sentencing, for which he received a reduction in sentence of more than 30 months because this Court credited his sincerity.

Petitioner also argues that his counsel was ineffective by not recognizing that he had a possible statute of limitations defense against some of the criminal charges. [Pet. ¶ 76 at 25.] In response, the government notes that the Court rejected a similar argument when Petitioner moved to withdraw his guilty plea. [Answer at 10.]

The Court rejected Petitioner's argument that Mr. Shapiro failed to recognize that Count One was barred by the statute of limitations, noting that Defendant waived a potential statue of limitations defense by pleading guilty and, substantively, that

Mr. Shapiro was "correct not to press a statute of limitations defense on Count One." Sgarlat, 705 F. Supp. 2d at 355-56. Petitioner does not argue anything new here to indicate that Mr. Shapiro's assistance of counsel was deficient in this regard.

**E. Ineffective assistance of counsel**

Finally, Petitioner argues that Mr. Kogan's counsel was ineffective on the issue of the statute of limitations defense, as well as his handling of the withdrawal of the guilty plea related to conduct of Mr. Shapiro described in "Ground One." [Pet. ¶¶ 3-4.] Petitioner also complains that Mr. Kogan's decision to "confuse the Court, and his client with a civil matter unrelated to sentencing" was unethical and Mr. Kogan's later disqualification left his third attorney, Petitioner's brother Michael Sgarlat, to be a "[l]ifeguard on the Titanic." [Id. ¶¶ 12-13, 20 at 27.]

The government responds that Mr. Kogan's aggressive representation of Petitioner was within the range of reasonable professional assistance and that Petitioner "cannot show that he would have fared any better if Mr. Kogan had proceeded differently." [Answer at 11.] Further, federal courts have rejected a per se rule that a defense attorney's violation of ethics or professional responsibility constitutes ineffective assistance of counsel. [Id.] Rather, the claims are subject to the same Strickland analysis, and Petitioner cannot show prejudice from Mr. Kogan's disqualification. [Id.] The fact is,

21

Mr. Kogan, encouraged and abetted by Mr. Sgarlat, saw fit to file a motion on Sgarlat's behalf seeking to withdraw Sgarlat's guilty plea. The motion lacked merit on all grounds, and it was denied. Kogan, in the meantime, teamed up with Sgarlat to solicit victims of Sgarlat's fraud for purposes of launching a civil suit on behalf of the victims against perpetrators other than Sgarlat, all as previously addressed by this Court in connection with Kogan's prior representation of Sgarlat. Whether or not Kogan acted unethically in soliciting Sgarlat's victims as clients was a total side-show. The main event was Kogan's filing of the motion to withdraw that turned out to be unsuccessful. That Kogan did not succeed in extracting Sgarlat from under the mountain of evidence of his guilt and his own confessions does not in any way suggest that Kogan's pursuit of the motion somehow harmed Sgarlat, other than to delay his sentencing while the motion was sorted out.

As explained above, Mr. Kogan's assistance of counsel regarding the alleged errors of Mr. Shapiro described in "Ground One" was reasonable and competent. Furthermore, Mr. Kogan properly raised the issue of a statute of limitations defense during the previous proceeding seeking to withdraw Petitioner's guilty plea, and that argument was rejected. Sgarlat, 705 F. Supp. 2d at 350, 356. The Court agrees with the government that, despite Mr. Kogan's disqualification, Petitioner has failed to show prejudice. Therefore, his petition will be denied.

**IV.  Conclusion**

For the foregoing reasons, the petition for habeas relief under § 2255 will be denied. The accompanying Order will be entered.

**V.  Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c)(1)(B), "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy that standard, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, jurists of reason could not disagree with the Court's resolution of Petitioner's constitutional claims. The conclusions reached in this Opinion are not close calls. Under the standard recited above, the Court will deny a certificate of appealability.

**November 14, 2012**                                    **s/ Jerome B. Simandle**
Date                                                     Jerome B. Simandle
                                                         Chief U.S. District Judge